Thank you. Good morning to the panel and to the police and the court. My name is Jan Marcus with the Law Firm of the Peoria Law Group. We represent the appellants in this matter. This case involves a question of records from the office's coverage of an insurance policy. It arises from a closed corporation involving family disputes that unfortunately have a history. This last one that we're involved with was pending in the Supreme Court in the state of New York in Westchester County. There are two questions that really arise. First, Ironshore, the appellee, denied coverage for direct or simple business coverage, claiming that under the policy, the definition of the word claim would preclude finding that a claim has actually been made against the individual appellants here, Joseph Armitano and Christina Armitano. And for sure they have a misrepresentation, not disrespectfully, of Joseph and Christina because of where Armitano is involved. The claim, the definition of the word claim in the policy is rather broadly stated, but we rely on the decision from the Appellate Division, the First Department, in West Point v. American International Insurance, which says that you can't look at the definition of the word claim to necessarily include the entire lawsuit. It can be less than that. Right, but was West Point, I mean, I didn't read West Point as making necessarily a broad statement that claim, even if it says in the contract it means all of these other things, it can't ever mean that. I didn't take it as necessarily putting out a standard that in these types of policies we are to always read claim as meaning individual actions as opposed to the whole proceeding. I think what the court said there, and we don't have a real long decision to look at in that regard, but can it at times necessarily have to mean the entire lawsuit? Yes, I suppose that that's possible, and this court recently considered that in the Daniel Peter case, which was brought to the attention of Mr. Sutton last week. It doesn't happen a lot, but it happened here, and the court considered the West Point case and drew a distinction between the type of exclusionary language, the deprivational language for claim that was in Daniel Peter as opposed to what existed in West Point. And that is a juxtaposition of what the district court did in our case, and one of the things that heavily bombed the appeal was the district court looked at the decision in West Point and said, basically, that's only one case. It doesn't cite any other cases. I don't find it adequate. But when you take a look at what West Point said and claiming that you have to remember the realities of litigation, which is an important phrase here, you can't just say automatically that it has to be the entire lawsuit. Right, so what in the context of this claim and this complaint and this policy suggests that it should not be read to include the entire proceeding? It's our position, Your Honor, that there are enough allegations directed to the individual attendance, defendant's flow of offense in the state court action, the underlying action, that would raise the possibility of coverage. And that's the standard. If there's any possibility of having something that's covered, the insurance company has to come in and cover it. They can choose not to, but they do it at their own risk. In this particular complaint, the amended complaint and the underlying action, there are allegations referring to the individual defendants as owing fiduciary duties, particularly the fourth cause of action, declaratory relief. Are you referring to counsel count four? Yes. You do agree that you conceded before the district court that nine out of the ten actual causes of action arise out of the contractual obligation. So we're left with count four, correct? That is correct. That is correct on the other part of the argument arising out of the exclusion, not the definition of claim, necessarily. Yes, Your Honor, it's correct. I agree with that. There's no way not to agree with that. It is what it is. So you agree, then, that it's really only count four that you claim imposes an obligation on the insurance company to cover. With regard to that claim, can you tell me why did the district court get it wrong when it found that even that claim of breach of fiduciary duty arose out of the contract? In other words, but for this agreement, there would be no such claim. This is why we take that position, Your Honor, because that fourth cause of action in the underlying matter speaks of a succession plan that was improperly handled, according to the allegations, by the individual appellants in their roles as members of the board of directors and or officers. It also speaks of the board trying to say there was a termination agreement of the underlying contracts. You don't need to have a claim for breach of the shareholder's agreements, which is the bulk of the claim, but you don't need that to claim that the board of directors and officers acted improperly. In fact, the state court has said that the board acted illegally. And the reason why I said we phrase the realities of litigation as important is because since we're involved with a claim that we have to look at four corners of in the underlying action, things are drafted in different ways by different attorneys in different matters. So the fact that there is no discrete cause of action labeled and in their role as officers and directors does not mean that there was no possibility that some degree of liability would have been found against them in that regard. Now, we won't know, at least we won't know after the trial, because the case settled. But what our argument is is that certainly triggered the duty to defend on the part of the carrier, whether there would be indemnity for the claims or not, that remains to be seen. And what we think the error of the district court was was not allowing that and not allowing us to go forward, conducting discovery because it would be interesting discovery here to see how much of that claim in their roles as officers and directors is really involved. But we didn't get the chance. The district court dismissed the case. I see my time is almost up. I'm sorry. Are there any other questions? I think I think really everything else is reasonable. OK. Thank you, Mr. Marcus. You've got some rebuttal time. Thank you. And now we'll hear from Mr. Murphy Petros. Good morning, Your Honors. And may it please the court. Melissa Murphy Petros on behalf of the defendant, Apolli Ironshore. The district court's order dismissing the complaint should be affirmed because coverage for the underlying action is precluded by the policy's contract exclusion, regardless of how you look at it. And I'll start with count four, where we left off, because throughout their brief, plaintiffs don't address the fact that the district court did, in fact, alternatively analyze the underlying complaint on a count by count basis. And taking plaintiff's admissions into consideration with regard to 9 of the 10, looked at count four and determined correctly that the declaratory judgment action that was sought there really arises from Joseph's actual or alleged breach of the Class A shareholder agreement. Because count four seeks a declaration that this termination agreement he unilaterally signed was invalid because it was in violation of the other. As to the policy's definition of claim, it is broad, as counsel has just recognized. And in pertinent part, it defines claim as a civil proceeding, which is a legal proceeding, as opposed to looking at each individual count. And as this court has recognized in Dileter and then the other cases that we've cited in our brief, Excel Specialty, et cetera, broad policy language like we have here can certainly take precedence over the default rules of policy construction under New York law. I think our points are set out in our brief, but if your honors have any questions, I'm happy to answer them. Well, if you could just speak a bit more to this question of the claim relating to a fiduciary duty, which your friend on the other side suggested could be, could in fact be beyond sort of the, it does not necessarily arise from the alleged shareholder agreement violations and all of that. And so therefore it's not within, it doesn't fit within the arising under. Could you speak to that? Certainly. So, and again, we're looking at count four. The allegations in count four with respect to breach of fiduciary duty are allegations going to demand futility. And the two Armentano brothers, who are the plaintiffs in the underlying action, had to plead that it would have been futile for them to demand that the corporate board sue Joseph. Their allegation there is, well, it would have been futile because the board was, you know, first stamping what Joseph wanted to do. Count four does not allege a breach of fiduciary duty claim against Joseph. There is no other board member who is individually named in this lawsuit. And in fact, because of that, you know, the policies granted coverage has not even been triggered with respect to any other board member because they're not named in this lawsuit. It simply goes to asking the underlying court to make a declaration that this termination agreement that Joseph signed unilaterally was in violation of the Class A shareholder agreement. It does not allege that Joseph or anybody else breached a fiduciary duty. I think the district court was correct in that respect on all counts. Your Honors, have any other questions? No, I think we have your argument. Thank you. Thank you very much. We request advertisement. Thank you. All right. Mr. Marcus, you've got some rebuttal time, two minutes. Thank you. Just briefly, since we're talking about the fourth course of action, I'm looking at the First Amendment complaint, which is the one in issue here. And if you take a look, just to emphasize, paragraph 48, it talks about a succession plan that the board had to put in place. Independent of any shareholders, there had to be a succession plan as to how the CEO, Joseph, was going to manage the company in case something happened to him or in case he resigned or something happened that he could continue. And it says the succession plan was formulated with the participation, knowledge, and approval of the PARACO board, the entire board, and then was wrongfully concealed from the plaintiffs by the PARACO board until after there was a transfer of the stock. The term is missing. It was fraudulently concealed. But, I mean, it's clear that that's what's being said there. And, again, the issue is, is there any potential coverage at all that would trigger coverage under the DNL policy? We think that's clear that it's yes. We don't need 12 different types of courses of action that could be alleged. We'll use one. And that would trigger coverage. And that's the basis of our argument. All right.